UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| GUIDEONE MUTUAL INSURANCE | ) | |
| COMPANY, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:03-cv-1812-SEB-VSS |
| | ) | |
| PAPA JOHN'S USA, INC., UNITED | ) | |
| STATES FIDELITY and GUARANTY | ) | |
| COMPANY, PHILLIP SCHMITTOU, | ) | |
| DONALD A. ROGERS, CAROL ROGERS, | ) | |
| Defendants. | ) | |

ENTRY GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT and
DENYING PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on the parties' Cross Motions for Summary

Judgment on Plaintiff's Declaratory Judgment action.  Plaintiff asks the Court to declare

the parties' respective rights and liabilities in terms of indemnity payments and defense

costs incurred in defending and settling a negligence lawsuit asserted by the victims of an

automobile accident.  For the reasons explained below, we GRANT in part and DENY  in

part Defendants' Motion for Summary Judgment and DENY Plaintiff's Cross Motion for

Summary Judgment.[1]

Factual Background

---

[1]This litigation has devolved into a suit between the two insurance companies only.  The
non-insurance-company defendants are no longer parties in interest in terms of this declaratory
judgment but remain in the caption for administrative consistency on the court's docket.

A. *The Parties and the Accident*

Two of the defendants, Donald Rogers ("Rogers") and Phillip Schmittou (Schmittou"), were involved in an automobile accident in Hendricks County, Indiana on December 19, 2000.  Schmittou worked as a pizza delivery driver for Papa John's USA, Inc. ("Papa John's"), and at the time of the collision, he was making deliveries in his personal vehicle.  Rogers and his wife, Carol, filed a negligence claim against Schmittou and Papa John's in state court for damages sustained as a result of the accident ("Rogers lawsuit").[2]  Compl., Ex. C (Rogers' Complaint for Damages).

At the time of the accident, Schmittou had a personal automobile insurance policy issued by GuideOne.[3]  Compl.¶ 8 and Ex. A.  Schmittou's employer, Papa John's, had business automobile coverage through the United States Fidelity and Guaranty Company ("USFG").  Id. ¶ 9 and Ex. B.[4]  Although not specifically named as an insured party in the GuideOne policy, Papa John's meets the definition of an "insured" under Schmittou's personal automobile insurance policy.   Defs.' Br. in Supp. of Mot. for Summ. J. ("Defs.' Br."), p. 2.

The Court has jurisdiction over the subject matter of this case under diversity of citizenship, 28 U.S.C. § 1332(a).  The dispute is between citizens of different states and

---

[2]Cause No. 32D01-0108-CT-159 (Hendricks County, Indiana Superior Court).

[3]Policy No. 035035-588, issued to Kenneth D. & Wendy K. Schmittou, of Danville, Indiana.

[4]Policy No. DRE3682300.

the amount in controversy exceeds $75,000.  Plaintiff GuideOne is an Iowa corporation with its principle place of business in West Des Moines, Iowa.  Schmittou and the Rogerses, no longer party-defendants in this declaratory judgment action, are citizens of Indiana.  Defendant Papa John's is incorporated in Kentucky and does business in Indiana, and Defendant USFG is incorporated in Maryland and licensed to do business in Indiana.  Compl. ¶¶ 1, 3, 4, 6.

### B.  The Insurance Policies

#### 1.  The GuideOne Policy.

The GuideOne policy provides the following pertinent liability coverage:

> A.   We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident ... We will settle or defend, as we consider appropriate, any claim or suit asking for these damages.  In addition to our limit of liability, we will pay all defense costs we incur.

> B.   "Insured" as used in this Part means:
> [ . . . ]
> 3.   For "your covered auto," any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

Compl. ¶ 17 and Ex. A, p. 4.

The GuideOne policy further defines "bodily injury" applies as "bodily harm, sickness or disease, including death that results."  Ex. A, p. 3.

Although there is no material factual dispute about whether Papa John's meets the definition of an "insured" under the GuideOne policy, Plaintiff emphasizes that Papa

John's is an "insured" only to the extent of its vicarious liability and not for any direct negligence.  Pl.'s Cross Mot. for Summ. J. at 2.  The precise allegation made in the Rogers lawsuit was that the "collision was proximately caused by the fault of the Defendants, Philip P. Schmittou and Papa John's Pizza, Inc., and each of them."  Compl., Ex. C (Rogers lawsuit).

The maximum limit of liability set out in the GuideOne policy is $100,000 for each person and/or $300,000 for each accident.  Compl. ¶ 8 and Ex. A.  In a recent settlement conference with Magistrate Judge Shields, the parties stipulated that the coverage limit applicable to the Rogers accident is $100,000, rather than $200,000, as previously briefed by Plaintiff.  Pl.'s Suppt'l Br. at 1.[5]  Therefore, in later discussions in this opinion, we accept as GuideOne's policy limit the mutually agreed upon figure of $100,000.

       2. The USFG Policy.

The commercial insurance policy issued by USFG to Papa John's provides for the following liability coverage:

> A.  Coverage
>> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."

---

[5] It was agreed that because Indiana courts do not consider a loss of consortium claim as an independent "bodily injury," but rather one that arises out of the injury suffered by the spouse, a loss of consortium claim does not count as another "person" in determining policy limits. See Medley v. Frey, 660 N.E.2d 1079, 1081 (Ind. Ct. App. 1996) (analyzing identical policy language and holding that a claim for loss of consortium is not included within the policy definition of "bodily injury" and is subject to the per person limits paid to the injured-spouse).

Ex. B, Section II -- Liability Coverage.

Papa John's liability coverage under the USFG Policy is subject to a self-funded retention amount of $100,000 per accident ("SFR"). Compl. ¶ 24; Def.'s Br., Ex.B (Self-Funded Retention Endorsement). The terms of the SFR modify the business auto policy in three relevant ways. First, damages resulting from a covered accident that would otherwise be payable under the policy's standard "liability coverage" will be reduced by the amount of the SFR, in this case, $100,000. Defs.' Ex. B, SFR ¶ A. Second, Papa John's retains the responsibility for investigating, defending and/or settling all claims for damages within the limits of the SFR. Id. ¶ E(1). Third, if the amount of total damages exceeds the SFR amount - $100,000 - USFG will indemnify Papa John's for a portion of the expenses associated with the claim, *e.g.* attorney fees and related litigation and investigation expenses. Id. ¶ G(1).[6]

3. The "Other Insurance" clauses.

Each policy contains a provision which refers to "other insurance," the analysis of which is relevant to determining whether one policy provides primary coverage and the other excess coverage, or whether they both are primarily liable and should share the cost of the settlement on a pro rata basis.

The "other insurance" provision in the GuideOne Policy states:

---

[6]USFG's obligation to indemnify Papa John's for defense costs arises after the amount of liability has been determined, and only if the total liability exceeds the SFR. In such a case, USFG pays a portion of defense costs equal to the ratio that the liability in excess of the SFR bears to the total amount of liability. Def.'s Ex. B, ¶ G(1).

**OTHER INSURANCE**:

> If there is other applicable liability insurance we will pay only our share of the loss.  Our share is the proportion that our limit of liability bears to the total of all applicable limits.  However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.

GuideOne contends that Papa John's SFR is "other applicable liability insurance," and, thus, pursuant to the "other insurance" provisions in its policy and in USFG's policy, both insurers should provide primary coverage on a pro rata basis. Compl. ¶¶ 22, 27; Defs.' Br. at 5, 7.

The "other insurance provision" in the USFG Policy states, in pertinent part:

> a.  For any covered "auto" you own, the Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this coverage form is excess over any other collectible insurance. . . .
>
> [ . . . ]
>
> d.  When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion of the Limit of Insurance of our Coverage Form bears to the total of the limits of all the coverage forms and policies covered on the same basis.

 Def.'s Br. at 6.

How these "other insurance" provisions affect the respective rights and responsibilities of the parties is the primary question of law in this case and is decided below.

C.  *Events following the filing of the Rogers lawsuit.*

After the Rogerses sued for negligence, both GuideOne and USFG retained counsel to represent the interests of their insureds, Schmittou and Papa John's, respectively.

The Papa John's/USFG lawyers took the position vis-a-vis GuideOne that the GuideOne policy provided primary coverage for the judgment in the underlying lawsuit and the USFG policy provided coverage in excess of the GuideOne policy limits - $100,000.  Compl. ¶ 12.  Papa John's tendered its defense to GuideOne on October 28, 2002, but GuideOne initially rejected the tender of defense because it believed the two policies at issue provided coverage for any potential judgment on a pro rata basis. Compl. ¶ 13; Defs.' Br. at 18; Pl.'s Cross Mot. Br. at 14.  Thereafter, on October 6, 2003, GuideOne agreed to assume Papa John's defense subject to a reservation of its right to decline coverage for both a defense and indemnity and to seek a declaratory judgment as to the duties and liabilities under both policies for the Rogerses alleged loss.  Comp. ¶ 13; Ex. D (GuideOne Oct. 6, 2003 letter).

GuideOne filed this declaratory judgment action in December 2003, alleging two issues between GuideOne/Schmittou, Papa John's/USFG and the Rogerses: (1) whether the GuideOne policy affords primary coverage as opposed to pro rata coverage; and (2) whether GuideOne is responsible for all or a portion of the defense costs for Papa John's and Schmittou.  Compl. ¶ 14.

The Rogerses' lawsuit was settled in January 2004 for $180,000, of which amount GuideOne paid $100,000 and Papa John's paid the remaining $80,000.  Def.'s Br. at 4.

7

Mr. and Mrs. Rogers were subsequently dismissed as parties to this declaratory judgment action.[7]

The parties agree that the focus of this insurance coverage dispute is whether Papa John's $100,000 SFR under the USFG Policy is properly construed as "other applicable liability insurance" for purposes of the "other insurance" clause in the GuideOne policy. If, as GuideOne contends, it is, then the two insurers both provide primary coverage on a pro rata basis. If, as USFG contends, the SFR is not "other insurance," the USFG policy provides coverage only for amounts in excess of the first $100,000, and shares coverage above that level on a pro rata basis with GuideOne until the limits of the GuideOne policy are exhausted. Id. at 5.

In addition to resolving the issue of policy applicability to the liability damages, the parties also ask us to determine the appropriate allocation scheme should any of the responsibility be shared and to resolve the question of which party is responsible for Papa John's' attorney's fees and defense costs and expenses associated with the Rogerses' lawsuit.[8]

───────────────

[7]R. 34, March 10, 2004.

[8]The Plaintiff sets forth additional material facts in its Opposition Brief in response to a legal argument advanced in the Defendants' summary judgment brief, but those facts are not relevant to the disposition of the issues before us. Defendant asserts that if we find that Papa John's and GuideOne share liability on a pro rata basis for the first $100,000 of liability, Schmittou will be required to reimburse Papa John's' portion of the liability under the theory that an employer has a common law right of indemnity against an employee where an employer's liability to another is solely derivative or vicarious of the employee's conduct and the employer is free from fault. Pl.'s Opp'n Br at 3; Defs.' Br. at 8. The question of Schmittou's responsibility

(continued...)

<u>Legal Analysis</u>

A. *The Standard for Summary Judgment.*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  Because these are cross motions for summary judgment and the same Rule 56 standards apply, our review of the record requires us to draw all inferences in favor of the party against whom a particular issue in the motion under consideration is asserted. <u>See</u> <u>O'Regan v. Arbitration Forums, Inc</u>., 246 F.3d 975, 983 (7th Cir. 2001); <u>Allstate Ins. Co. v. Tozer</u>, 298 F.Supp.2d 765, 767 (S.D. Ind. 2003).  The parties have set forth no material disputed facts, thus paving the way for our summary resolution of the issues as a matter of law.


B. *Liability*

We begin by noting that both the GuideOne and USFG policies provide insurance coverage for Rogerses' claims against Schmittou and Papa John's.  Defs' Br. at 6.  When two policies provide insurance coverage, the question becomes which of the policies

---

[8](...continued)
at common law is not before us on summary judgment; thus we do not incorporate the additional facts material to that issue.

provides primary coverage, or, if both policies provide primary coverage, whether the policies provide coverage on a pro rata basis.  To resolve this question, the provisions of each policy and, in particular, the provisions referring to "other insurance," must be analyzed.

As we have previously noted, both policies contain  "other insurance" provisions. When "other insurance" provisions conflict, the Indiana Supreme Court has adopted a mandatory pro rata rule, that is, each insurer contributes on the basis of its percentage to total policy limits.   In Indiana Ins. Co. v. American Underwriters, Inc., 304 N.E.2d 783, 787 (Ind. 1973), the Indiana Supreme Court concluded that because:

> "insurers draft 'other insurance' provisions for the purpose of reducing their liability when the insured has access to other collectible insurance . . . [the Court] can give effect to this purpose by holding that where 'other insurance' clauses conflict, . . ., they are to be ignored and each insurer is liable for a prorated amount of the resultant damage not to exceed his policy limits.  In such a case, there exists dual primary liability."

See also, United Farm Bureau Mutual Ins. Co. v. Nationwide Mutual Fire Ins. Co., 678 N.E.2d 1165, 1168 (Ind. Ct. App. 1997) (holding that Indiana Ins. Co. articulates a mandatory rule).

The GuideOne "other insurance" provision states that "[i]f there is other applicable liability insurance [*sic*] we will pay only our share of the loss."  GuideOne contends that Papa John's USFG business automobile policy, with overall limits of $1,000,000, is "other applicable liability insurance" and so GuideOne's "other insurance" clause applies to the Rogerses' settlement.  USFG, on the other hand, disputes the applicability of the

GuideOne "other insurance" clause because it would require a finding that the Papa John's SFR is the "other applicable liability insurance."  Indeed, GuideOne alleges this to be the case: "GuideOne maintains that the SIR [SFR] is "other collectable [sic] insurance" for the purpose of the "other insurance" analysis, requiring judgment to be entered on a pro rata basis."  Compl. ¶ 27.

If the GuideOne provision does not apply, there is no conflict with "other insurance" and GuideOne will be regarded the primary insurer while the USFG policy provides coverage in excess of the limits of the primary coverage.   Def.'s Br. at 7.  Thus, in order to mandate a pro rata contribution to the Rogerses' settlement, the "other insurance" provisions in the respective polices must both apply and conflict.

USFG argues that the provision in its policy neither applies nor conflicts with the "other insurance" provision in the GuideOne policy, because the USFG policy is subject to Papa John's $100,000 SFR and the SFR is not "other collectible insurance" for the purpose of triggering coverage, despite GuideOne's contentions to the contrary.  Compl. ¶¶ 25-27.   The parties agree that the threshold issue for our resolution, therefore, is whether Papa John's SFR qualifies as "other applicable liability insurance," in analyzing the "other insurance" provisions.  Indiana courts have not previously addressed whether a self-funded, or self-insured, retention constitutes other applicable insurance for purposes of "other insurance" clauses; without their express guidance, we are left to our own best judgment as to how they might decide the issue.

We have reviewed the cases cited by both parties, each not surprisingly lending

some support to the parties' diametrically opposed outcomes, as well as the treatises they have both relied upon.  We reference in particular the <u>Windt</u> treatise on insurance for two reasons: first, both parties rely on it in their briefs, and second, it discusses both aspects of our issue here, in the sections on "Self-Insured Retention" and "Conflicting 'Other Insurance' Provisions," §§ 11.31 and 7.1, respectively.

USFG primarily relies on <u>American Nurses</u>, a case in which "other insurance" provisions similar to the case at bar were analyzed by the New Jersey Supreme Court, which held that an employer's self-insured sum, as contemplated in the excess provision of its liability policy, was a deductible and *not* insurance for the purpose of analyzing an "other insurance" provision.  <u>American Nurses Ass'n v. Passaic General Hosp.</u>, 484 A.2d 670 (N.J. 1984).  We are reluctant to simply cite the case for this proposition without providing an explanation of the context, given its somewhat unusual procedural history.[9] In <u>American Nurses</u>, an employee/nurse was sued for malpractice and the claim settled for $375,000.  The nurse's alleged malpractice was covered by insurance in two ways: (1) the employer/hospital had an insurance policy that covered employee malpractice up to $500,000 per accident; and (2) the nurse had personal malpractice coverage through a professional association for up to $200,000 per claim.  Under the employer's policy, the

---

[9]As Couch's insurance treatise points out, each of the three different levels of courts deciding this case  reached a slightly different conclusion on whether the arrangement at issue was self-insurance or a deductible, and whether it amounted to "other insurance" within the meaning of a policy also applicable to the events at issue.  COUCH § 10.2, n. 8.  The appeals court reversed the trial court's decision and the state Supreme Court reversed in part the appeals court's decision.

hospital was responsible for investigating, defending and settling claims brought against it and for indemnifying its employees up to the "self-insured sum" of $100,000.  Moreover, the insurer explicitly provided coverage in excess of the "self-insured sum" and in excess of the liability limits of any concurrent "other insurance" policy.   The nurse's policy also had an "other insurance" provision, which specified that if the insured had other valid and collectible insurance, then the policy provided excess, not primary, liability coverage.

The trial court held that the hospital's self-insurance clause was "an undertaking of insurance" because its express purpose was to indemnify employees for up to the self-insured sum rather than to function as a self-retention or deductible amount.  Am. Nurses, 445 A.2d 448, 453 (N. J. Super. L. 1981).  The court of appeals reversed the trial court on this issue, reasoning as follows:

> "So-called self-insurance is not insurance at all.  It is the antithesis of insurance.  The essence of an insurance contract is the shifting of the risk of loss from the insured to the insurer.  The essence of self-insurance, a term of colloquial currency rather than of precise legal meaning, is the retention of the risk of loss by the one upon whom it is directly imposed by law or contract.  Clearly then, one may be regarded as a self-insurer as to any risk of loss to which he is subject and which is susceptible to insurance coverage but as to which he has not obtained such coverage.  As a matter of colloquial usage, he is a self-insurer of that risk.  But as a matter both of common sense and the fundamentals of insurance law, a failure to purchase obtainable insurance is not itself insurance.  That failure simply and inevitably means that there is no insurance for that risk.  Thus, the undertaking to self-insure cannot, by definition, be regarded as insurance.  The same is true when only part of the risk of loss is shifted to an insurer.  The insured's retained portion of the risk is the so-called "deductible" amount, if any, and the extent to which the risk exceeds the policy limits.  The insured is a "self-insurer" as to both retained portions of the risk.  Neither, however, constitutes insurance, and it has indeed been held that a deductible from coverage, which can be loosely termed self-insurance, does

> not constitute other insurance within the meaning of a standard
> other-insurance clause, irrespective of the size of the deductible and
> whether or not the deductible amount is funded and administered by an
> insurance company (citations omitted).

Am. Nurses Ass'n v. Passaic Gen. Hosp., 471 A.2d 66, 69 (N.J. Super. A.D.1984), *aff'd in part and rev'd in part, on other grounds*, 484 A.2d 670 (N.J. 1984).

GuideOne, in contrast, argues that the Wisconsin Supreme Court's holding in Hillegass v. Landwehr, 499 N.W. 2d 642 (Wis. 1993) should control the outcome of our case, where the court determined that self-insurance was "insurance" for purposes of an "other insurance" provision in an automobile liability policy.

In Hillegass, Mr. Landwehr and Mr. Bain, a Burlington Air Express employee, were traveling for pleasure in Bain's company car, which was owned by Burlington Air Express.  Mr. Landwehr was driving when the car was involved in a collision with the plaintiff, Mr. Hillegass, who sued thereafter for damages.  Burlington Air Express was self-insured at the time of the accident for $1 million with an additional $2 million umbrella policy.  Mr. Landwehr had a personal automobile insurance policy which contained an "other insurance" clause specifying that, for a vehicle not owned by the insured, the policy only provided coverage in excess of other collectible insurance. Resting its holding on considerations of Wisconsin public policy rather than precedent from other jurisdictions, the court determined that the essence of Burlington's self-insurance arrangement was to retain their own risk for the first $1 million in exchange for not paying premiums to a third-party insurer.  This arrangement struck the court as the

functional equivalent of third-party liability insurance because it remained an undertaking to "compensate another for loss," albeit in the absence of a contract.  As such, it fulfilled the requirements of insurance as defined by Black's Law Dictionary (1979 ed.). Hillegass, 499 N.W. 2d at 655.

Factually, we regard the Hillegass case as distinguishable from the case at bar. Here we are asked to consider two policies, each with an "other insurance" provision, a pro rata clause and an excess clause, facts not found in Hillegass.  In fact, we have no comparative information concerning Burlington's "self-insurance" provision.  Moreover, the cases cited by the self-insurer, Burlington, suggest "self-insurance" circumstances altogether different from those of Papa John's, that is, circumstances in which self-insurance is treated as "other insurance" either because the self-insurer affirmatively elects that status and fails to comply with the statutory requirements for self-insurers, or is a de facto self-insurer under state laws and fails to make arrangements that substitute for third-party insurance coverage .[10]   Neither party argues that Papa John's is a qualified self-insurer under Indiana laws who seeks to avoid the state's financial responsibility laws.  In contrast, Papa John's asserts that it is mindful of state financial responsibility

---

[10]See, e.g.,White v. Howard, 573 A.2d 513 (N. J. App. Div. 1990) (holding that a rental car agency's self-insurance was treated as "other insurance" because the agency had selected status as a self-insurer, complied with state financial responsibility laws and obtained a certificate of insurance); Southern Home Ins. Co. v. Burdette's Leasing Serv., 234 S.E.2d 870, 872 (S.C. 1977) (holding considerations of public policy required the court to treat a car leasing business as a qualified self-insurer under state law, despite the lack of a certificate of self-insurance, and as such, the leasing agency was required to provide the same coverage to automobiles owned by it as that which is provided by automobile liability insurance policy under state financial responsibility laws).

laws because it requires delivery drivers to obtain their own personal automobile

insurance policies with policy limits that meet the mandatory statutory minimum

insurance limits.  Defs.' Reply Br. at 7, 11; Ex. A (excerpt from Employee Handbook).

Our analysis causes us to side with USFG's argument that Papa John's's SFR is

not "insurance" in terms of analyzing "other insurance" provisions.  The treatise cited by

both parties, Windt's Insurance Claims and Disputes, supports this view.

In Section 11.31, Windt writes:

> Properly viewed, a self-insured retention does not constitute
> insurance.  As a result, additional insureds and third parties cannot
> make a claim against a named insured on the basis that the named
> insured, by virtue of the self-insured retention, has issued insurance
> in the amount of the retention.  Similarly, a self-insured retention
> does not constitute insurance for the purpose of "other insurance"
> clauses, discussed in § 7:1. Similarly, the fact that the insured has an
> SIR under one line of insurance does not adversely impact on the
> insured being able to recover complete coverage (from the first
> dollar) under another line of insurance; the "other insurance" clause
> in the latter policy is irrelevant. (citations omitted).

In Section 7:1, Windt observes that, "in general, self-insurance should not

constitute "other insurance" for the purposes of ascertaining the effect of an other

insurance clause."  See State Farm Mut. Auto. Ins. Co. v. Bogart, 717 P.2d 449, 453

(Ariz. 1986), citing to Universal Underwriters Ins. Co. v. Marriott Homes, Inc., 238 So.2d

730, 732 (Ala. 1970) (holding that 'other insurance' means a policy of insurance of like

kind issued by an insurance company in exchange for premium charged.  It would be a

contortion of the term insurance to hold that its meaning as employed here is broad

enough to include 'self insurance,' which while commonly referred to in that fashion is

16

actually the antithesis of insurance as that term is commonly used).  This view was also adopted by the Indiana Court of Appeals in Eakin v. Indiana Intergov'tl Risk Management Auth., 557 N.E. 2d 1095 (Ind. Ct. App. 1990), and was characterized as the "majority rule" in the Hillegass case.  Hillegass, 499 N.W.2d at 654.  In our view, this is clearly the better reasoned analysis and conclusion.

Accordingly, we hold that Papa John's SFR is not "other applicable liability insurance" for purposes of triggering the "other insurance" clauses in the GuideOne and USFG policies.  As a consequence, GuideOne is solely responsible for providing insurance coverage for the first $100,000 in liability assessed against Schmittou and Papa John's to compensate for the injuries sustained by Donald Rogers in the December 2000 automobile accident.  On the issue of liability coverage, we therefore grant summary judgment in favor of Defendants.

B.  Allocation of Settlement and Defense Costs.

With respect to the remaining $80,000 in liability payout, USFG/Papa John's is liable for this settlement payout because GuideOne's policy limits appear to have been exhausted.  The preliminary agreement between the parties in which GuideOne paid $100,000 to the Rogerses and Papa John's paid $80,000 is consistent with the Court's rulings in this judgment.

GuideOne argues that Papa John's and/or USFG also owe additional amounts as defense costs and fees on a pro rata basis on behalf of Papa John's and Schmittou.  GuideOne maintains that "[b]ecause the GuideOne policy and the USF&G policy should

17

be applied to the loss on a pro rata basis . . . , [its] responsibility for Papa John's's costs

and/or attorneys fees incurred after October 22, 2002, should likewise be apportioned

between GuideOne and Papa John's on a pro rata basis." Pl.'s Br. at 14.

The GuideOne policy expressly states that it "will settle or defend, as we consider

appropriate, any claim or suit asking for [bodily injury or property] damages. In addition

to our limit of liability, we will pay all defense costs we incur." Defs.' Ex. A. The parties

agree that Papa John's qualifies as an "insured" under the policy.[11] Therefore,

GuideOne's responsibility for defense costs extends to Papa John's defense costs as well

as to Schmittou's.

In contrast, the USFG policy provides that Papa John's is self-insured for all

defense costs incurred, until a determination is made as to the total amount of liability.

Defs.' Br., p. 14; SFR ¶¶ E,G. If the total amount of liability exceeds the amount of the

SFR, USFG is obliged to indemnify Papa John's for a portion[12] of the "claim expenses,"

*i.e.*, litigation costs. A pro rata sharing of defense costs between Papa John's and USFG

_____

[11]See supra at 3. GuideOne states that although it does not dispute most of the factual contentions in USFG's motion for summary judgment, in its view, "Papa John's [] is considered to be an insured under the GuideOne policy only to the extent of Papa John's vicarious liability, not for any direct negligence. Pl.'s Cross Mot. Summ. J. at 2. The claims asserted in the underlying lawsuit by the Rogerses against Papa John's were based on the alleged negligence of Schmittou (Complaint ¶ 10), and, absent facts to explain how Papa John's was responsible for Schmittou's collision with Rogers, the claim against Schmittou's employer appears to be based on its vicarious responsibility. See Defs.' Reply at 13.

[12]Specifically, paragraph G of the SFR provides that "we will indemnify you for a portion of the "claim expenses" in the ratio that the portion of the total loss in excess of such self-funded retention bears to the total loss payable (inclusive of the self-funded retention) under this policy with respect to such "accident".

is established by the terms of the USFG policy, but the policy is silent in terms of any pro rata sharing of costs between GuideOne and USFG.  There is no language in the GuideOne policy that imposes or authorizes a pro rata scheme for defense costs.  On the contrary, the policy plainly states that GuideOne will pay for all defense costs *it* incurs (emphasis ours).

Consequently, we conclude that the costs incurred in defending Schmittou and Papa John's in the Rogerses' lawsuit must be borne by GuideOne for two reasons: first, GuideOne promised to "pay all defense costs [it] incurred" and these costs became its responsibility from the time Papa John's tendered its defense to GuideOne on October 22, 2002.[13]  And secondly, since we determined that GuideOne is liable up to and including its $100,000 policy limits, and the remaining $80,000 for which Papa John's is liable is less than the SFR, USFG's direct responsibility for liability never "kicks in."  Thus, it has no contractual obligation to indemnify Papa John's under the policy, either for the $80,000 or for the costs and fees.  Accordingly, on the issue of defense costs, we <u>GRANT</u> summary judgment in favor of USFG.

One final matter: USFG, in passing fashion, asks us to impose liability on GuideOne and to reimburse Papa John's for any additional costs incurred by Papa John's as a result of GuideOne's reservation of rights (which costs have not been specified), and

---

[13]Although GuideOne advances the alternate theory that USFG owes Schmittou a defense in the Rogerses' lawsuit because Schmittou is an "insured" under the USFG policy in its complaint, no argument to that effect is made in its Cross Motion for Summary Judgment and, therefore, is not before the court. Compl. ¶¶ 28-32.

to require that GuideOne pay Papa John's other costs, including attorneys' fees, incurred

in this action.  Defs.' Br. at 18-20.   USFG has not developed its arguments in this regard

and fails to cite to any contractual provisions giving rise to a responsibility for attorney

fees and costs.  On this issue, we therefore <u>DENY</u> Defendant' motion for summary

judgment.

Conclusion

Accordingly, for the reasons stated above, we <u>GRANT</u> USFG's Motion for

Summary Judgment, finding: (1) Papa John's SFR is not "other applicable liability

insurance" in the context of "other insurance" provisions; (2) GuideOne is responsible for

payment of the first $100,000 of coverage; and (3) GuideOne is solely responsible for

Schmittou's and Papa John's defense costs incurred in the Rogers lawsuit.  We also

<u>DENY</u> USFG's motion for summary judgment on the issues of liability for any additional

litigation expenses and attorney's fees incurred in this action.

IT IS SO ORDERED.

Date: _____05/10/2005_____

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copy to:


Jan N. Campbell
LEEUW OBERLIES & CAMPBELL, P.C.
jcampbell@indylegal.net

Christopher C. Levandoski
LEEUW OBERLIES & CAMPBELL
clevandoski@indylegal.net

Stephen R. Pennell
STUART & BRANIGAN
srp@stuartlaw.com

David Andrew Starkweather
STUART & BRANIGIN LLP
das@stuartlaw.com